UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BMO HARRIS BANK N.A., <br><br>                           Plaintiff, <br><br>             v. <br><br>RADIUM2 CAPITAL, LLC, <br><br>                           Defendant. | 22 Civ. 8328 (DEH) <br><br>MEMORANDUM OPINION <br>AND ORDER |

DALE E. HO, United States District Judge:

Before the Court are Plaintiff BMO Harris Bank's ("BMO's") motion to amend its complaint, ECF No. 45, and Defendant Radium2 Capital's ("Radium's") motion to dismiss the case, ECF No. 46. For the reasons discussed below, BMO's motion is **DENIED** as futile, and Radium's motion is **GRANTED** for BMO's failure to timely bring its claims.

## BACKGROUND

### I. Factual Background

The following facts are taken from Plaintiff BMO's Complaint and Proposed Amended Complaint ("PAC") and are assumed to be true solely for purposes of adjudicating Defendant Radium's motion. *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023).[1]

BMO is a national bank with a principal place of business in Illinois. Compl. ¶ 8, ECF No. 1; PAC ¶ 8, ECF No. 45-1. Radium is a merchant cash advance funding company with a principal place of business in New York. Compl. ¶ 9; PAC ¶ 9. BMO brings this action against Radium for allegedly "converting or otherwise fraudulently obtaining collateral and cash

---

[1] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses, unless otherwise indicated. All references to Rules are to the Federal Rules of Civil Procedure.

payments previously pledged to BMO through a series of undisclosed merchant cash advance agreements." Compl. ¶ 1; PAC ¶ 1.

In or about April 2016, BMO entered into floor plan financing arrangements with a group of commonly controlled Northern California-based automobile dealerships ("the Dealerships") in the initial amount of $80,000,000, subsequently reduced to $66,000,000. Compl. ¶ 17; PAC ¶ 17. The floor plans were secured by vehicles, parts, and accessories offered for sale, as well as certain other "property, assets, intangibles, information and objects, and the proceeds thereof, including the rights to credit card receivables and other payments from the Dealerships' customers [("the Collateral")]." Compl. ¶ 5; PAC ¶ 5. "[T]he Dealerships granted to BMO liens on and security interests in substantially all of their personal property," and BMO perfected its security interest with a UCC filing with the California Secretary of State on April 7, 2016. Compl. ¶ 19; PAC ¶ 19.

Beginning in at least September 2017, Radium entered into undisclosed "Merchant Agreements or Merchant Cash Advances" with the Dealerships, secured by the same Collateral previously pledged to BMO. Compl. ¶¶ 7, 22; PAC ¶¶ 7, 22. Radium's agreements with the Dealerships were "amended to denote that no UCC filing would be made in conjunction with the alleged granting of the security interest to Radium." Compl. ¶ 28; PAC ¶ 30. Radium did not make public its relationship with the Dealerships, nor did it "otherwise inform or disclose the Merchant Agreements or Merchant Cash Advances to BMO until the Dealerships ceased operating and were in liquidation in 2019." Compl. ¶ 22; PAC ¶ 22.

At some point before November 2018, the Dealerships defaulted and failed to repay BMO. Compl. ¶¶ 19-20; PAC ¶¶ 19-20. Nonetheless, one or more of the Dealerships paid

2

Radium over $4.1 million[2] in cash payments, utilizing "the same Collateral and/or its cash proceeds which had previously been pledged to BMO."  PAC ¶¶ 2, 23.  The transfers took place between September 26, 2017, and January 2018.  *Id.* ¶ 23.  The Dealerships transferred these payments through an account owned by their principal, Rahim Hassanally ("Hassanally"), and Momentum Automotive Management, LLC ("MAM"), an entity that acted as a "pass-through for funds received form [sic] the Dealerships."  *Id*. ¶¶ 24-25.

In November 2018, BMO filed suit in California state court against the Dealerships and Hassanally to compel payment.  *See* Compl. ¶ 20; PAC ¶ 20.  On November 9, 2021, the state court entered judgment against the Dealerships and Hassanally, in the amount of $2,831,415.13. Compl. ¶ 25; PAC. ¶ 27.  Since then, Hassanally "has thwarted efforts to obtain further information relating to the payments made by the Dealerships through MAM to Radium by invoking his 5th Amendment self-incrimination privilege when asked in a court-ordered judgment debtor's examination in July 2022" about the relationship and amount exchanged between Radium and the Dealerships via MAM in 2017/2018.  Compl. ¶ 25; PAC ¶ 27.

Prior to the commencement of this action, the parties entered into a tolling agreement which, as amended, tolled the applicable statute of limitations periods related to BMO's claims and Radium's counterclaims during the period between May 6, 2022, and September 30, 2022.  *See* Volynsky Decl. ¶ 3, ECF No. 47.

---

[2] The original Complaint alleges that Radium provided over $1.7 million in merchant cash advances during this period.  Compl. ¶ 2.  Where there are discrepancies between allegations in the Complaint and PAC, the Court incorporates the proposed amendments.

## II.   Procedural History

On September 29, 2022, BMO commenced this action. BMO alleges five counts against Radium: common law conversion "under Illinois law" (Count I); constructive fraudulent transfer under Section 5(a)(2) of the Illinois Uniform Fraudulent Transfer Act, 740 Ill. Comp. Stat. 160/1, *et seq*. (Count II); fraudulent transfer with intent to defraud under Section 5(a)(1) of the Illinois Uniform Fraudulent Transfer Act, 740 Ill. Comp. Stat. 160/1, *et seq*. (Count III); unjust enrichment (Count IV); and tortious interference with contract (Count V). *See* Compl. ¶¶ 29-59.

On February 2, 2023, the Court set a deadline for any motion for leave to amend to be filed by May 21, 2023. ECF No. 29. On May 24, 2023, with the consent of both parties, the Court extended the deadline to amend pleadings to July 14, 2023. ECF No. 39. On July 14, 2023, BMO filed a letter-motion for leave to file an amended complaint, which Radium opposed. ECF No. 40. The Court granted BMO leave to file its motion and set a briefing schedule on Defendant's anticipated motion to dismiss. ECF No. 44.

On August 28, 2023, BMO filed its motion to amend the complaint. On September 11, 2023, Radium filed its motion to dismiss the case. On October 18, 2023, this case was reassigned to the undersigned.

### LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. New York Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Id.* at 106-07. "The pleading requirements in the Federal Rules of Civil Procedure . . . do not

4

compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). However, a motion to dismiss based on an affirmative defense is permissible "where the facts necessary to establish the defense are evident on the face of the complaint." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 199 (2d Cir. 2018).

## DISCUSSION

Radium argues that there are two grounds on which BMO's claims may be dismissed: they are time-barred by the applicable statutes of limitations periods, and they fail for claim-specific reasons under Rule 9(b). The Court need not address the latter argument because the case must be dismissed as time-barred.

### I. The Timeliness of BMO's Claims

#### A. Common Law Claims (Counts I, IV, V)

As explained below, the Court holds that Plaintiff's common law claims (Counts I, IV, and V) are time-barred.

#### 1. Statute of Limitations

The parties disagree whether New York or Illinois statutes of limitations apply to Counts I, IV, and V ("common law claims"). The issue is essentially dispositive of these claims. As the parties acknowledge, in New York, the statute of limitations for each of BMO's common law claims[3] is generally three years, *see* N.Y. C.P.L.R. § 214(3) (stating that "an action to recover a

---

[3] BMO suggests that its conversion claim, which is styled in its Complaint as falling under Illinois common law, must be "governed by Illinois law." *See* Pl.'s Br. 7, ECF No. 53. It cites no authority for this assertion, and the Court finds no case law to support its application of Illinois law in this instance. Instead, the Court concludes that BMO's conversion claim is

5

chattel or damages for the taking or detaining of a chattel" must be brought within three years),[4] whereas in Illinois, the statute of limitations for each of these claims is five years, *see* 735 Ill. Comp. Stat. 5/13-205 ("[Actions . . . to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued.").[5]

If New York's three-year statute of limitations period applies, then BMO's common law claims are time-barred. As BMO readily concedes, Radium initiated the allegedly unlawful transfers "beginning on or about September 2017," and the parties did not enter into tolling agreements until more than four years later, "effective as of May 6, 2022." Pl.'s Br. 7 n.3; *see also id.* at 11 (noting that the alleged unlawful acts took place within *five* years of this suit). And BMO does not identify any purportedly unlawful payments made, or any tortious conduct taken, within three years of May 6, 2022, when the tolling period began. *See generally* Compl. (describing conduct that purportedly occurred between September 2017 and January 2018); PAC ¶ 23 (same).

---

subject to the same analysis as the rest of BMO's common law claims, and it assesses the three claims together.

[4] *See also Bilalov v. Gref*, No. 20 Civ. 9153, 2022 WL 4225968, at *10 (S.D.N.Y. Sept. 13, 2022) (stating that the statute of limitations for conversion and unjust enrichment claims is three years in New York), *appeal withdrawn sub nom. ABC v. Gref*, No. 22-2671, 2023 WL 2964392 (2d Cir. Jan. 24, 2023); *Botsas v. United States*, 5 F. App'x 69, 71 (2d Cir. 2001) (stating that "a tortious interference claim is governed by a three-year statute of limitations" in New York).

[5] *See also Guarantee Tr. Life Ins. Co. v. Kribbs*, 68 N.E.3d 1046, 1053 (Ill. App. Ct. 2016) (stating that the statute of limitations for conversion claims in Illinois is five years); *CitiMortgage, Inc. v. Parille*, 49 N.E.3d 869, 883 (Ill. App. Ct. 2016) ("The limitations period applicable to unjust enrichment claims is five years"); *Poulos v. Lutheran Soc. Servs. of Illinois, Inc.*, 728 N.E.2d 547, 559 (Ill. App. Ct. 2000) ("An action for tortious interference with a contractual relation has a five-year statute of limitations.").

Where, as here, jurisdiction rests upon diversity of citizenship, the Court applies New York's statutes of limitations. *See Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998). This is so "even when the injury giving rise to the action occurred outside New York." *Id.* at 627. Thus, although BMO's injury accrued in Illinois, where BMO resides and sustained its alleged loss,[6] the Court applies New York's three-year statute of limitations and holds that BMO's common law claims are time-barred.

### 2. BMO's Counterarguments

To avoid New York's time bar on its claims, BMO argues that (1) under New York's substantive choice-of-law principles, Illinois' five-year statute of limitations for common law claims applies here, Pl.'s Br. 6-9; (2) fraud and deceit preclude Radium's statute of limitations defenses, so the Court must apply equitable estoppel, *id.* at 5-6; and (3) even if New York law applies, BMO's conversion claim survives because the Court must apply the six-year statute of limitations period ordinarily reserved for fraud claims in New York, *id.* at 12. The Court considers each of these arguments in turn.

#### *i.    Choice of Law*

BMO argues that under New York's choice-of-law rules, Illinois' five-year statute of limitations should apply because the State of Illinois has a greater interest in this suit. *See id.* at 7. This argument is unavailing because BMO fails in the first instance to demonstrate that substantive choice-of-law rules are applicable to the statute of limitations question at issue here.

---

[6] "New York follows the traditional definition of accrual—a cause of action accrues at the time and in the place of the injury. Where the [alleged] injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." *Thea v. Kleinhandler*, 807 F.3d 492, 497-98 (2d Cir. 2015). Here, the alleged injury is economic, so it occurred in Illinois, where Plaintiff resides.

7

As BMO acknowledges, "'New York['s . . . ] choice of law rules . . . determine which state's *substantive* law to apply.'"  Pl.'s Br. 7 (quoting *Machleder v. Diaz*, 801 F.2d 46, 51 (2d Cir. 1986) (emphasis added)).  New York "generally classifies statutes of limitations as procedural," not substantive.  *Gerena v. Korb*, 617 F.3d 197, 206 (2d Cir. 2010).  *See also Portfolio Recovery Assoc., LLC v. King*, 927 N.E.2d 1059 (N.Y. 2010) ("[S]tatutes of limitations are [generally] considered procedural because they are deemed as pertaining to the remedy rather than the right.").

BMO correctly notes, however, that there is an exception to this general rule: where "a statute creates a cause of action and [merely] attaches a time limit to its commencement, [thus rendering] the time [] an ingredient of the cause."  *In re Stage Presence Inc.*, 559 B.R. 93, 101 (S.D.N.Y. Bankr. 2016).  But this exception does not apply where "the cause was cognizable at common law."  *Id.*  Where a plaintiff asserts a common law claim, "a statutory time limit is commonly taken as one of limitations [that] must be asserted by way of defense," rather than as a substantive element of the claim itself.  *Id.*

Here, BMO does not dispute that its conversion, tortious interference with contract, and unjust enrichment claims arise under common law.  The Illinois statutory provision cited by BMO merely provides the limitations period for these common law claims, without creating the causes of action.  *See* 735 Ill. Comp. Stat. 5/13-205.  Accordingly, the five-year limit in the Illinois statute is procedural.  *See In re Stage Presence Inc.*, 559 B.R. at 101 ("New York courts have long treated statute of limitations on common law claims as 'procedural' limits on claims rather than matters of substantive law.").  New York's choice-of-law rules are irrelevant, and BMO's argument is unavailing.

## ii.    *Equitable Estoppel*

Next, BMO argues that its claims cannot be time-barred because justice requires that the Court "'apply the doctrine of equitable estoppel to prevent an inequitable use of [Radium's statute of limitations] defense.'"  Pl.'s Br. 6 (quoting *Rodriguez v. Morales*, 607 N.Y.S.2d 1, 1 (App. Div. 1994)).  Because BMO fails to establish the elements of equitable estoppel, its argument fails.

"Equitable estoppel is an 'extraordinary remedy'" invoked only under exceptional circumstances.  *Roeder v. J.P. Morgan Chase & Co.*, 523 F. Supp. 3d 601, 616 (S.D.N.Y. 2021), *aff'd*, No. 21-552, 2022 WL 211702 (2d Cir. Jan. 25, 2022) (*citing Pulver v. Dougherty*, 871 N.Y.S.2d 495, 497 (App. Div. 2009)).  "[T]o get the benefit of a statute of limitations," a party is not obligated "to make a public confession, or to alert people who may have claims against it." *Zumpano v. Quinn*, 849 N.E.2d 926, 930 (N.Y. 2006).  "A plaintiff seeking to invoke the doctrine of equitable estoppel must establish that subsequent and specific actions by defendant[] somehow kept [the plaintiff] from timely bringing suit." *Jacobson Dev. Grp., LLC v. Yews, Inc.*, 106 N.Y.S.3d 119, 121 (App. Div. 2019).  Under New York law, "misrepresentations made to the community at large . . . [are] insufficient to make out a claim for equitable estoppel in light of the specificity requirement in the equitable estoppel standard."  *Roeder*, 523 F. Supp. 3d at 619.  Thus, equitable estoppel is only "appropriate where the plaintiff is prevented from filing an action within the applicable statute of limitations due to defendants' misconduct toward the potential plaintiff, not [toward] a community at large."  *Id.*

BMO's two principal arguments are that Radium purportedly concealed its fraud by: (1) amending its contracts with the Dealerships not to require a UCC-1 public filing, *prior to* the transfer of any funds; and (2) channeling funds to itself through MAM, a "pass-through entity."

9

Pl.'s Br. 5-6. Neither act was a "subsequent . . . action[]" taken to prevent BMO from discovering the objectionable transfers to keep it "from timely bringing suit." *Jacobson Dev. Grp., LLC*, 106 N.Y.S.3d at 119. Both were actions taken prior to, or in the course of transferring the funds in question. And neither act is a specific action to keep BMO—as opposed to the "community at large," *Roeder*, 523 F. Supp. 3d at 619—from learning of Radium's alleged actionable conduct.

BMO fails to allege that Radium took any subsequent or specific action after the transfers occurred to prevent BMO from learning of Radium's actionable conduct within the three-year limitations period. Accordingly, BMO fails to "allege [a] specific misrepresentation, or any deceptive conduct sufficient to constitute a basis for equitable estoppel." *Zumpano*, 6 N.Y.3d at 675.

### iii. New York Fraud Statute of Limitations

Finally, BMO argues that even if New York's statute of limitations applies to its claims, its conversion claim is still timely because the conversion occurred "as a result of Defendant's fraudulent conduct," so New York's six-year statute of limitations for common law fraud claims must apply. Pl.'s Br. 12. However, "[w]here a plaintiff brings both fraud and conversion claims, . . . New York courts will not apply the longer limitation if the fraud claim is merely incidental to that for conversion." *Rachunow v. Jamieson*, No. 20 Civ. 5627, 2021 WL 1894206, at *3 (S.D.N.Y. May 11, 2021) (collecting cases). A fraud claim is "merely incidental" to the conversion claim if the "gravamen" of the wrong is the alleged diversion of funds. *See id.* A "fraud action is *not* incidental [to a conversion claim] only when: (1) the fraud occurred separately from and subsequent to the injury forming the basis of the alternate claim; and (2) the injuries caused by the fraud are distinct from the injuries caused by the alternate claim."

10

*MarketXT Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 395 (S.D.N.Y. 2010) (emphasis added).

Here, the gravamen of the dispute is the alleged wrongful diversion of funds through fraudulent means. *See* Compl. ¶ 1 (alleging that BMO "fraudulently obtain[ed] collateral and cash payments previously pledged to BMO through a series of undisclosed merchant cash advance agreements"); PAC ¶ 1 (same). BMO does not allege any fraud separate from or subsequent to its conversion claim; indeed, the Complaint alleges that fraud occurred when the payments at issue were made to Radium, i.e., at the time that the purported conversion occurred. *See* Compl. ¶¶ 32, 35-36, 41-43; PAC ¶¶ 34, 37-38, 43-45. The alleged fraudulent conversion of BMO's property, therefore, "forms the basis for all of plaintiff's claims." *MarketXT Holdings Corp.*, 693 F. Supp. 2d at 396.

The Complaint alleges the same injury and remedy for all claims, further demonstrating that a separate fraudulent transfer claim is not necessary to make BMO whole. *See Rattenni v. Cerreta*, 728 N.Y.S.2d 401, 402 (App. Div. 2001) ("[S]ince the legal remedy for conversion would have afforded the plaintiff full and complete relief, the cause of action alleging breach of fiduciary duty should be dismissed based upon the three-year Statute of Limitations governing conversion."). Where, as here, "[t]he facts underlying the fraud and conversion claims are the same[,] [t]he injuries are the same[,] [and t]he relief sought is identical[,] [t]ime barred claims cannot be revitalized by tricks of pleading." *Universitas Educ., LLC v. T.D. Bank, N.A.*, 15 Civ. 5643, 2015 WL 9304551, at *3 (S.D.N.Y. Dec. 21, 2015). Because BMO's fraud claim "is merely incidental to another claim[, conversion,] with a shorter limitations period," the Court "will not apply the six-year statute of limitations" available for fraud claims. *Malmsteen v. Berdon, LLP*, 447 F. Supp. 2d 655, 663 (S.D.N.Y. 2007).

11

Accordingly, for the reasons discussed above, "on the face of the complaint and related documents," *LC Cap. Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148, 157 (2d Cir. 2003), each of BMO's common law claims is time-barred as falling outside New York's three-year statute of limitations period.[7]

\* \* \*

BMO cannot overcome the time bar on its common law claims "on the face of [its] complaint," and accordingly, Counts I, IV, and V are dismissed. *See Spinelli*, 903 F.3d at 199.

### B. IUFTA Claims (Counts II, III)

As explained below, the Court concludes that BMO's statutory claims under the IUFTA (Counts II and III) are also time-barred.[8]

---

[7] The parties dedicate much space to discussing whether New York's "borrowing" statute, C.P.L.R. § 202, applies. *See* Def.'s Br. 7-8, ECF No. 46; Pl.'s Br. 10-12, Def.'s Reply 2-3, ECF No. 55. The New York borrowing statute provides that when a nonresident plaintiff sues in New York upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either: (1) New York, or (2) the state where the cause of action accrued. *See* C.P.L.R. § 202. It is invoked, *inter alia*, to preclude a party from suing in New York merely to take advantage of a longer limitations period in New York than exists in the state where the party's injury arose. The borrowing statute is therefore irrelevant here, because New York's statute of limitations is the *shorter* of the two statutes of limitations at issue. *See S.H. v. Diocese of Brooklyn*, 167 N.Y.S.3d 171, 179 (2022) ("[T]he purposes of CPLR 202 include preventing forum shopping, affording New York defendants the benefit of the shortest possible Statute of Limitations, and adding clarity to the law and providing the certainty of uniform application to litigants.").

[8] BMO notes in passing that "federal courts applying Illinois law have applied the doctrine of equitable tolling when parties defraud or conceal their wrongdoing." Pl.'s Br. 13. It does not expressly argue that the Court should apply equitable tolling principles here. *See generally* Pl.'s Br. Even if the Court construes BMO's Opposition as having made this argument, it concludes that the argument fails because BMO cannot demonstrate that "'some extraordinary circumstance stood in [its] way and prevented timely filing.'" *Knauf Insulation, Inc. v. S. Brands, Inc.*, 820 F.3d 904, 908 (7th Cir. 2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). While "[c]ourts have allowed equitable tolling where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," *id.* at 909, BMO has not shown that Radium "induced" or "tricked" it into missing its filing deadline here.

The parties do not dispute that Counts II and III are governed by the Illinois Uniform Fraudulent Transfer Act ("IUFTA"). The applicable statute of limitations provisions hold that each claim may be brought "within 4 years after the [disputed] transfer was made or the obligation was incurred." 740 Ill. Comp. Stat. 160/10(a), (b). BMO argues that a "one-year discovery period" additionally applies to both claims, whereby claims brought outside the four-year period may nonetheless be raised within "one year after the transfer or obligation was or could reasonably have been discovered by the claimant." *See* Pl.'s Br. 12-13 (citing 740 Ill. Comp. Stat. 160/10(a)). The law is clear, however, that the one-year discovery rule applies to BMO's fraudulent transfer claim only; it does not apply to its constructive fraud claim. *See* 740 Ill. Comp. Stat. 160/10(a), (b). Thus, only BMO's fraudulent transfer claim may be brought within "one year after the transfer or obligation was or could reasonably have been discovered by the claimant." *Workforce Sols. v. Urb. Servs. of Am., Inc.*, 977 N.E.2d 267, 277 (Ill. App. Ct. 2012).

**Count II**. Under the applicable statute of limitations, for BMO's constructive fraud claim to survive, BMO must be able to point to events that occurred within four years of May 6, 2022, when the tolling period began. It cannot. *See generally* Compl. (describing conduct that purportedly occurred between September 2017 and January 2018); PAC ¶ 23 (same). Accordingly, BMO's Count II constructive fraud claim is time-barred as falling outside the applicable four-year limitations period.

**Count III**. BMO relies on the one-year discovery rule in its attempt to save its fraudulent transfer claim, arguing that "[t]he PAC alleges, and it must be assumed true on [a

---

*See supra* Section A.2.ii (concluding that BMO failed to demonstrate that Radium took any subsequent action to conceal its conduct from BMO, to prevent BMO from timely bringing suit).

13

motion for] dismissal, that BMO could not have reasonably been aware of the transfers or [of] the lending relationship between the Dealerships and the Defendant due to the concealment of same." Pl.'s Br. 13. But BMO expressly acknowledges in its pleadings that Radium disclosed "the Merchant Agreements or Merchant Cash Advances to BMO [when] the Dealerships ceased operating and were in liquidation in 2019." PAC ¶ 22. Because BMO had access to Radium's Merchant Agreements—which BMO alleges improperly diverted the proceeds of its collateral— BMO had, as of 2019, "sufficient information concerning [its] injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct [by Radium] [wa]s involved." *Workforce Sols.*, 977 N.E.2d at 278. But the tolling period did not go into effect until approximately three year later, on May 6, 2022. Thus, even under the one-year discovery rule, this claim is time-barred.

\* \* \*

BMO cannot overcome the time bar on its IUFTA claims "on the face of [its] complaint," and accordingly, Counts II and III are dismissed. *See Spinelli*, 903 F.3d at 199.

## II. Motion to Amend

Rule 15 provides that leave to amend a complaint shall be given "freely" when "justice so requires." Fed. R. Civ. P. 15(a)(2). "It is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). While Rule 15 is a "permissive standard" that "is consistent with [the Court's] strong preference for resolving disputes on the merits," *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015), denial is warranted "for good reason, including futility." *McCarthy*, 482 F.3d at 200. "An amendment to a pleading is futile if the proposed

14

claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

The Court has reviewed BMO's Proposed Amended Complaint and, wherever possible, incorporated within this opinion the additional pleadings alleged therein.  The Court concludes that no amendment would save Counts I through V because, as explained above, they are time-barred by the applicable statutes of limitations.  *See Lucente*, 310 F.3d at 258 ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)").  BMO's motion to amend is therefore denied.

## CONCLUSION

For the reasons discussed above, Radium's motion to dismiss is **GRANTED** as to all counts.  BMO's motion to amend is **DENIED**.

The Clerk of Court is respectfully requested to terminate ECF Nos. 45 and 46, and to close the case.

SO ORDERED.

Dated: March 21, 2024
New York, New York

DALE E. HO
United States District Judge